## Irvine's Estate.

*Decedent's estate—Trust and trustee—Payments out of corpus—Authority—Accounting.*

A trustee who has exercised testamentary authority to make payments to a life tenant out of the corpus of a trust estate, may not arbitrarily charge such payments to income.

Argued April 11, 1923. Appeal, by trustee from order of O. C. Warren Co., Sept. T., 1921, No. 44, sustaining exceptions to the account of John P. Melvin, Executor and Trustee of the Last Will and Testament of Guy C. Irvine, 2d, deceased. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Dismissed.

42, (1923).] Statement of Facts—Opinion of the Court.

Exception to trustee's account. Before ARIRD, P. J.

The facts are stated in the opinion of the Superior Court.

The court sustained the exceptions and entered a decree surcharging the trustee with the payment from the corpus of the estate of twenty-five dollars per month, for a period of forty months, from July 1, 1918, to December 1, 1921; requiring trustee on or before August 1, 1922, to file a supplemental account of payments out of the corpus of the estate, and requiring trustee to pay to T. J. Irvine the sum of eight hundred and 38/100 dollars. John P. Melvin, trustee, appealed.

*Error assigned* was the order of the court.

*Frank J. Lyons,* for appellant.

*T. L. Hampson,* for appellee.

OPINION BY LINN, J., October 5, 1923:

The question is whether a trustee who has exercised testamentary authority to pay out of corpus, may arbitrarily charge such payments to income. The trustee complains that the court sustained exceptions to his account of February 3, 1922, and requires him to file a supplemental account charging the corpus with amounts paid to the beneficiary at the rate of $25 a month from July, 1918, to December 1, 1921. In 1918, acting according to the will, he had decided the beneficiary should receive such sums. In his letters sending the checks to the beneficiary's attorney, he designated some of the payments as principal, while others were sent without designation as principal or income; all were paid in circumstances justifying the beneficiary in believing he was receiving part of the principal in addition to income. No notice was given that the trustee had changed his mind and would now charge all those payments to income; that fact may only be inferred from the account. The

dispute is solely between him and the life-beneficiary. Has he shown any legal reason to permit such radical change in the substance, form and effect of his accounting?

The trust was created by will as follows: "The one-third part of my residuary estate hereinbefore bequeathed unto T. J. Irvine, my brother......I now give, devise and bequeath to my executor hereafter named in trust for said T. J. Irvine; the same to be invested in good securities and the interest to be paid to the said T. J. Irvine by my said executor, either annually or semi-annually as can be best done by reason of the investment which shall be made. I also direct, authorize and empower my said executor as trustee for my said brother T. J. Irvine to, from time to time, as his discretion may warrant, to give to my said brother, T. J. Irvine such part or portions of the principal sum of such devise as may be necessary, if necessary, in addition to the interest or income as may be necessary for his comfortable support and maintenance, it being my intention not to limit my executor to payment simply of the interest on this bequest to my brother, but to also if he in his discretion deems it wise and proper to take from time to time such part or parts of the principal and pay it to my brother for his support and maintenance,—any portion of the same remaining at the death of the said T. J. Irvine to be paid to Alice Unruh above named." Alice Unruh is the daughter of T. J. Irvine.

Irvine was 87 years old when the evidence was taken, feeble and decrepit, requiring crutches to move about; he had been a farmer, and, with his son, lived on a farm in which he had a life estate. For some years prior to this suit, there had been disputes concerning the trust, between him and the trustee, an attorney-at-law,—and his grievances had foundation. The income was not paid as the will directed,—in 1917, for example, only $100 was paid, though much more was received. He was obliged to employ counsel to collect the income. It seems the

bulk of the corpus was in an unsecured loan to appellant as executor of his mother's estate, and appellee sued to obtain security. In 1918, he filed a petition, not printed in this record, asking for an allowance from the corpus, and, appellant's brief states, containing "scandalous matter." On June 30, 1918, the parties agreed, among other things, that Irvine should withdraw that petition and appellant should pay to him $25 a month out of the principal of the trust. That proceeding appears to have been at issue until November, 1921, when it was discontinued and the present suit was begun (a) to require the trustee to file an account, (b) to pay the income and (c) "such portion of the corpus......as will suitably maintain and support your petitioner as directed by the will......"

Pursuant thereto, on February 3, 1922, an account of receipts of income and payments to Irvine from June, 1916, to February, 1922, was filed, showing an alleged over-payment of income of $199.32 and showing no payment of any part of the principal. Irvine filed exceptions denying the accuracy of the account. That issue was tried in the court below and resulted in the challenged decree. It goes no further than has been stated and relates only to payments out of corpus made prior to December, 1921.

The trustee made no offer to show that he was deceived about the necessities of the beneficiary, in deciding in 1918, that in the light of those necessities, a wise exercise of discretion warranted or required the proposed payments out of principal thereafter actually made; in the absence of such showing there is no case. If, as his counsel now suggests, his decision was influenced by the beneficiary's promise (unperformed) to withdraw the petition of 1918, a sufficient reply is that the beneficiary's necessities were controlling, and as his own decision to pay out of corpus was, and until withdrawn, remained a determination of that fact, its effect may not be nullified by the collateral dispute

concerning the withdrawal of a petition said to contain scandalous matter.

We may add that the record contains evidence to support the conclusion of the court below that during the period under discussion Irvine's necessities were such as to justify the trustee in deciding, and in adhering to the decision, that Irvine should receive the payments made out of corpus.

The appeal is dismissed, costs to be paid out of the corpus of the trust.

DISSENTING OPINION BY GAWTHROP, J.:

If the question were whether a trustee who has exercised testamentary authority to pay out of corpus may arbitrarily charge such payments to income, I should not differ with my brethren in the disposition of this appeal. But the case is not so simple as that. The challenged decree surcharges the trustee not only with payments actually made out of corpus, but also with payments not in fact made but due the beneficiary under the agreement to pay him $25 monthly out of the principal of the trust. That the account should have shown the amounts paid out of corpus must be conceded. But it does not follow that, because the trustee made an agreement with the beneficiary to pay him a definite amount per month out of corpus, he can be compelled to carry out the agreement and should be surcharged with payments due thereunder, but not in fact paid. The court below grounded its decision on the proposition that the trustee, by making the agreement, exercised the discretionary powers given him under the will and that having paid Irvine for several months under the agreement he was obliged to continue the payments thereunder. With this I cannot agree. It was within the discretion of the trustee to make payments to Irvine from the principal without making any agreement so to do, if the necessities of the cestui que trust warranted it. "A court will not interfere with the discretion placed in a trustee without

clear and adequate cause. The presumption is in favor of the honest exercise of the discretion": Duchar's Est., 225 Pa. 427. But we have been referred to no authority, and I know of none, which holds that a testamentary trustee authorized to make payments of principal at his discretion may, by agreement with the beneficiary, bargain away and divest himself of the right to continue to exercise the discretion vested in him by the will. Such an agreement is not enforceable by the beneficiary and an order of court undertaking to enforce it cannot stand. Nor can the order be sustained on the theory that, as the trustee made at least ten different payments to the cestui que trust out of corpus on the basis of $25 per month, a presumption arises that subsequent undesignated payments included $25 per month on account of principal. The obligation of the trustee under the will was to pay the income annually or semiannually. Any other payments which he made were discretionary. In the absence of any evidence that specific payments were made under this discretionary power, it is to be presumed that payments not otherwise designated were payments of income. While I agree with the learned judge of the orphans' court that the trustee was derelict in the performance of his duties and that the cestui que trust has suffered annoyance on this account the order of the orphans' court made to enforce the agreement between the trustee and the cestui que trust cannot be sustained without doing violence to well-settled principles of law governing the duties and powers of trustees. The question involved is not whether the trustee will be permitted to repudiate his partly executed agreement, but whether the agreement so far as it was executory is enforcible. If a trustee does not honestly exercise his discretion or exercises it arbitrarily or unreasonably, the court will interfere. "The discretion of the trustee is but a legal one, and whenever the law determines that a proper case has arisen in which the trustee's discretion should have been exercised in a particular way, he will be con-

strained to act in accordance therewith": Buchar's Estate, supra. The remedy of the cestui que trust was not to enforce the agreement, but to require the faithful performance of duty by the trustee as imposed by the will, including the exercise of his discretion in a manner not unreasonable and in wanton disregard of the necessities of the cestui que trust and to have the trustee removed for failure so to do. I would sustain the second and fourth assignments so far as they complain of the surcharge of the trustee with payments on account of principal, which were not in fact made, and remit the record for further proceedings along the line indicated herein.